IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EDWARD RUDOLPH,

          Plaintiff,

vs.	Case No. 10-1163-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On December 11, 2007, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 17-25). Plaintiff alleges that he has been disabled since May 31, 2006 (R. at 17). Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 19). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 19). At step two, the ALJ found that plaintiff had the following severe

impairments: diabetes mellitus with peripheral neuropathy, left knee impairment, and gout (R. at 19). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19). After determining plaintiff's RFC (R. at 20), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 24). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 24-25). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III. Are the ALJ's RFC findings supported by substantial evidence and in accordance with the requirements of SSR 96-8p?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118,

5

1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings in this case:

> ...the undersigned finds that the claimant has the residual functional capacity to perform a range of light work, or work requiring lifting and/or carrying 20 pounds

>     occasionally and 10 pounds frequently,
>     sitting 6 hours in an 8-hour workday, and
>     standing and/or walking 3 ½ to 4 hours in an
>     8-hour workday, alternating from sitting to
>     standing every 60 minutes.

(R. at 20). The ALJ stated that the "residual functional capacity in this decision is supported by the medical evidence of record" (R. at 20); the ALJ then summarized the medical evidence in the case, including medical opinion evidence from Dr. Pauly, a treating physician (R. at 20-21).

On June 27, 2007, Dr. Pauly stated the following:

>     At this time, I feel the patient unable to do
>     walking and standing activities. I[t] would
>     be best that he works in a sitting position
>     the majority of the day. He would need
>     frequent breaks during the day to get up and
>     walk about in order to relieve any discomfort
>     that occurs in his legs.

(R. at 258). On July 26, 2007, Dr. Isaac, another treating physician, stated: "He needs to exercise regularly in the form of walking" (R. at 273).

At the hearing, plaintiff testified that he could probably sit for 45 minutes and would then have to get up (R. at 61). Plaintiff also indicated that he could walk a couple of blocks (R. at 71), and he can stand for 30 minutes to 1 hour at one time (R. at 71-72). When asked how long he could stand from 8:30 in the morning until 5 or 5:30 in the evening, he indicated that he could stand for 3 ½ to 4 hours over the 8 hour period (R. at 72). Plaintiff then indicated that he would probably not be able to

7

stand that long if he was having problems with his feet and legs, but that, even if he was having such problems, he could stand for a minimum of 2 hours during the day (R. at 73).

At the hearing, when the vocational expert (VE) was given a hypothetical question consistent with the RFC set forth above, including a need to **alternate from sitting to standing every 60 minutes** (emphasis added), the VE testified that plaintiff could perform light work as an electronics technician, an electronics assembler, and a wire harness assembler (R. at 84-86). The VE was then asked to add to the hypothetical question "**frequent and unscheduled rest breaks throughout the workday**" (R. at 88, emphasis added). The VE testified that, with this addition, all work would be eliminated (R. at 88-89). This additional limitation is significant in light of the opinion of Dr. Pauly that plaintiff "**would need frequent breaks during the day to get up and walk about in order to relieve any discomfort that occurs in his legs**" (R. at 258, emphasis added).

Defendant argues that the ALJ's RFC is a reasonable interpretation of Dr. Pauly's opinion that plaintiff required frequent breaks to get up and walk about in order to relieve discomfort in his legs (Doc. 12 at 17). First, alternating from sitting to standing every 60 minutes is not the same as needing frequent breaks during the day to get up and walk about to relieve discomfort in the legs. Second, the testimony of the VE

8

that frequent and unscheduled rest breaks throughout the workday would eliminate all work raises a serious question about plaintiff's ability to work if he, according to Dr. Pauly, requires frequent breaks during the day to get up and walk about. For these reasons, the court does not find that the ALJ's RFC is a reasonable interpretation of Dr. Pauly's opinion that plaintiff required frequent breaks to get up and walk about. Therefore, the court finds that the ALJ erred when he stated that the RFC is supported by the medical evidence of record; the ALJ does not cite to any medical or other evidence that provides clear support for his RFC findings. Furthermore, the ALJ offered no explanation for not including in his RFC findings the need for plaintiff to have frequent breaks to get up and walk about in order to relieve discomfort in his legs. This case shall therefore be remanded in order for the ALJ to determine what weight to give to the opinions of Dr. Pauly and to include a narrative discussion describing how the evidence supports his RFC assessment in accordance with SSR 96-8p.

**IV. Did the ALJ err in his credibility assessment?**

Plaintiff also asserts error by the ALJ in his credibility assessment. When this case is remanded, the ALJ will need to make new credibility findings after deciding what weight to accord to the opinions of Dr. Pauly.

When this case is remanded, the ALJ will need to reconsider

9

part of his credibility findings in accordance with the case law set forth below. In his decision, the ALJ stated the following:

> [Plaintiff] reported caring for his personal needs, cooking, making minor repairs to house, doing some mowing, taking out the trash, doing laundry, unloading the dishwasher, going outside daily, driving a car, shopping, and paying bills. In addition, the claimant reported playing music in a nursing home (Exhibit 7E). **Although the claimant described limitations in his ability to perform some of these activities, his ability to perform them to any degree suggests that he retains the ability to work full-time**.

(R. at 23, emphasis added).

As the court just stated in Moore v. Astrue, Case No. 10-1242-SAC (D. Kan. May 18, 2011):

> The ALJ noted that plaintiff could care for her personal needs, go outside daily, drive a car, shop, cook simple meals, do household chores such as dusting and sweeping, watch television, and talk on the phone daily. Although the ALJ indicated that plaintiff described limitations in her ability to perform some of these activities, the ALJ stated that "her ability to perform them to any degree suggests that she retains the ability to work full-time" (R. at 16).
>
> Other court decisions have previously found that such a finding is clearly erroneous. Matlock v. Astrue, Case No. 09-1207-MB (D. Kan. May 7, 2010, Doc. 16 at 24-25); Mount v. Astrue, Case No. 08-1097-WEB (D. Kan. May 14, 2009, Doc. 17 at 16); Toon v. Astrue, Case No. 07-1369-MB (D. Kan. March 17, 2009, Doc. 18 at 9). Unlike the case of Cobb v. Astrue, 2010 WL 381614 at *5 (10th Cir. Feb. 4, 2010), in which the court held that the ALJ did not err when the ALJ stated

10

that the claimant's ability to perform activities of daily living to any degree suggested that she retained "<u>some</u> capacity to perform activities such as sitting, standing, walking and functioning in a work environment," 2010 WL 381614 at 5 (emphasis added), the language by the ALJ in the case before the court (Moore) clearly states that plaintiff's ability to perform activities of daily living to "any degree" suggests that plaintiff can work "full-time," or on a regular and continuing basis for 8 hours a day, 5 days a week, or an equivalent work schedule.  <u>See</u> <u>Cobb</u>, 2010 WL 381614 at *5 (the ALJ did not state that claimant's performance of activities of daily living to any degree meant she had the RFC to do sustained work activities on a regular and continuing basis, which generally means 8 hours a day for 5 days a week, or an equivalent work schedule).

Furthermore, according to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2010 at 396).  Although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  <u>Thompson</u>, 987 F.2d at 1490.  The ability to engage in limited daily activities does not establish that a claimant can engage in substantial gainful activity or perform full-time competitive work.  <u>Draper v. Barnhart</u>, 425 F.3d 1127, 1130-1131 (8th Cir. 2005).  Therefore, the ability to perform daily activities to any degree does not suggest or establish a claimant's ability to engage in

11

>     substantial gainful activity or perform full-
>     time work.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 1st day of June 2011, Topeka, Kansas.

                        s/ Sam A. Crow
                        Sam A. Crow, U.S. District Senior Judge